# CASE NO. 16-16193

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————

## BRUCE ANDERSON, JOHN WILSON, ROBERT AUSTIN, and CALIFORNIA ADVOCATES FOR NURSING HOME REFORM, a California non-profit corporation

*Plaintiffs and Appellants,*

v.

## DIANA DOOLEY, in her official capacity as Secretary of the CALIFORNIA DEPARTMENT OF HEALTH AND HUMAN SERVICES

*Defendant and Appellee.*

———————————

On Appeal From The United States District Court for the
Northern District of California, Case No. 4:15-cv-05120-HSG
The Honorable Haywood S. Gilliam, Jr.

———————————

## BRIEF OF *AMICUS CURIAE* CALIFORNIA ASSOCIATION OF HEALTH FACILITIES IN SUPPORT OF DEFENDANT-APPELLEE AND AFFIRMANCE

———————————

HOOPER, LUNDY & BOOKMAN, P.C.

Mark E. Reagan (SBN: 143438)
mreagan@health-law.com
Scott J. Kiepen (SBN: 175504)
skiepen@health-law.com
Katrina A. Pagonis (SBN: 262890)
kpagonis@health-law.com

575 Market Street, Suite 2300
San Francisco, California 94105
Telephone:  (415) 875-8500
Facsimile:  (415) 875-8519

*Attorneys for Amicus Curiae California Association of Health Facilities*

## **<u>Rule 26.1 Corporate Disclosure Statement</u>**

Pursuant to Federal Rule of Appellate Procedure 26.1, *amicus curiae* California Association of Health Facilities ("CAHF") discloses that it is a California nonprofit corporation, has no parent corporation, and does not issue shares of stock, and hence, no publicly held company owns 10% or more of its stock. CAHF is a voluntary association representing the licensees of nursing homes and other long-term health care facilities.


*/s/ Mark E. Reagan*
MARK E. REAGAN

# <u>TABLE OF CONTENTS</u>          <u>Page</u>

INTERESTS OF AMICUS CURIAE......................................................1

SUMMARY OF ARGUMENT ...........................................................2

ARGUMENT .................................................................................3

     A.    California Regulators and Skilled Nursing Facilities Need
          Discretion when Handling the Complexities of Resident
          Transfers, Discharges, and Re-admissions, Particularly When
          Residents Can No Longer be Safely Cared for in Their Nursing
          Facility ...............................................................................3

           1.    The Case of Appellant Wilson and Others Exemplifies
                 Why Mandatory Post-Hearing Enforcement of
                 Transfer/Discharge Appeal Determinations is
                 Inappropriate ..............................................................4

           2.    California Regulators' Need the Ability to Exercise
                 Appropriate Discretion in Involuntary Discharge Cases ..........10

     B.    California's Standardized Admission Agreement Ensures Each
          Resident is Aware of His or Her Right to Readmission ....................11

     C.    Involuntary Discharges are Rare and Generally Involve
          Extraordinary Circumstances ............................................13

CONCLUSION ............................................................................15

# TABLE OF AUTHORITIES                    Page

**Cases**

*Carmona v. Flores*,
No. GS016481 (Los Angeles Superior Court, March 22, 2016) ........................7

*Single v. Congregational Church Retirement Community*,
No. 34-2017-00220058-CU-NP-GDS, Minute Order (Sacramento
Superior Court, Nov. 14, 2017) ................................................8

*St. John's Pleasant Valley Hosp. D/P SNF-Subacute Unit v. Dir.*
*Dep't Health Care Svcs.*,
No. 34-2015-80002189 (San Francisco Superior Court 2016) ...........................6

*Walsh v. Kindred Nursing Centers West, LLC*,
No. CGC-11-512497, Statement of Decision (San Francisco
Superior Court, Apr. 22, 2013) .....................................................6, 7

**Federal Statutes**
42 U.S.C. § 1983 .....................................................................4

**State Statutes**

Cal. Civil Code § 56.................................................................9

Cal. Health & Safety Code
§ 1418.6.........................................................................4, 7
§ 1423.............................................................................10
§ 1425.............................................................................10
§ 1429.1...........................................................................10
§ 1430......................................................................6, 7, 10, 11
§ 1599.61..........................................................................12

**Federal Regulations**

42 C.F.R.
§ 483.20...........................................................................5
§ 483.40.........................................................................4, 5
§ 488.402..........................................................................10

## TABLE OF AUTHORITIES                    Page

45 C.F.R.
  § 160.103............................................................................................9
  § 164.500............................................................................................9

81 Fed. Reg. 68,688 (proposed Oct. 4, 2016)...........................................9

**State Regulations**

Cal. Code Regs. tit. 22
  § 72303................................................................................................5
  § 72515................................................................................................7
  § 72516..............................................................................................12

**Other Authorities**

Admin. for Cmty. Living, National Ombudsman Reporting System
  (2015), https://agid.acl.gov/DataGlance/NORS/ ...............................15

William Pipal, *You Don't Have to go Home But You Can't Stay Here:*
  *The Current State of Federal Nursing Home Involuntary*
  *Discharge Laws*, 20 Elder L.J. 235, 256 – 258 (2012)..................11,12

California Standard Admission Agreement for Skilled Nursing and
  Intermediate Care Facilities, Form No. CDPH 327 (May 2011),
  https://www.cdph.ca.gov/CDPH%20Document%20Library/Contro
  lledForms/cdph327.pdf..............................................................12, 13

## INTERESTS OF AMICUS CURIAE[1]

The California Association of Health Facilities ("CAHF") is a nonprofit professional association founded more than 50 years ago to serve as a statewide organization for long-term care providers. CAHF represents approximately 1,295 licensed skilled nursing and intermediate care facilities serving individuals with developmental disabilities throughout the State of California. Of the 1,237 licensed freestanding skilled nursing facilities in California, CAHF currently represents approximately 799 of these facilities.

As an instrumental stakeholder in the provision of care to residents in skilled nursing facilities, CAHF seeks to provide insight and context to this Court as to the competing resident interests and legal obligations involved in difficult discharge cases, the steps regulators have taken to maximize patient autonomy relative to discharges, and the actual extent of any involuntary discharge problem. This information is necessary to fully appreciate how unnecessary and extraordinarily disruptive mandatory post-hearing enforcement of transfer/discharge appeal determinations would be.

---

[1] Amicus Curiae CAHF states that no party's counsel authored this brief in whole or in part, that no party or party's counsel contributed money that was intended to fund preparing or submitting the brief, and that no person other than CAHF or its counsel contributed money that was intended to fund preparing or submitting the brief. *See* Fed. R. App. 29(a)(4)(E).

1

## SUMMARY OF ARGUMENT

Plaintiffs-Appellants are seeking to stretch federal law to compel California regulators to impose one narrow and extraordinary form of relief—a mandatory injunction—in every successful transfer/discharge appeal. Tying the hands of California regulators in this way would be manifestly improper both because (as argued by Defendant-Appellee Dooley) federal law does not create the private right asserted by Appellants and because the complexity of nursing facility transfers, discharges, and readmissions necessitates regulatory flexibility.

Courts that have confronted residents' attempts to obtain readmission have often encountered competing regulatory obligations that make readmission inappropriate or impossible. By way of example, after the Sacramento Superior Court reviewed the case of Appellant John Wilson, it concluded that *readmission would be unlawful*, and therefore issued a peremptory writ requiring the California Department of Health Care Services ("DHCS") to vacate its determination in Mr. Wilson's transfer/discharge appeal. To put it simply, skilled nursing facilities operate in a robust regulatory environment where they must address competing legal obligations and balance the interests of select residents against the rights of facility residents as a whole. A scheme of mandatory post-hearing enforcement of transfer/discharge appeal determinations would be incompatible with this reality and would be unnecessary given other regulatory protections for skilled nursing

2

facility residents and the rarity of involuntary discharges.

## ARGUMENT

**A.**  **California Regulators and Skilled Nursing Facilities Need Discretion when Handling the Complexities of Resident Transfers, Discharges, and Re-admissions, Particularly When Residents Can No Longer be Safely Cared for in a Particular Nursing Facility**

Nationally, skilled nursing facilities care for communities of residents with complex and varying medical needs, and they are sometimes are forced to make difficult decisions while balancing the desires of individual residents, the facility's capacity to provide needed care, and the rights of the resident community as a whole. Appellants endeavor to simplify skilled nursing facilities' obligations and motivations in involuntary discharges by focusing exclusively on the interests of discharged patients and the facilities' payment concerns while wholly ignoring the interests of other residents and the complex and overlapping legal obligations borne by skilled nursing facilities. The relief sought be Appellants (mandatory post-hearing enforcement of transfer/discharge appeal determinations) would hobble regulators, preventing them properly balancing the interests of an individual resident, the rights of the resident community, and the legal obligations of the skilled nursing facility. Moreover, Appellants' arguments elevate the interests of the small minority of residents that are not appropriate for readmission above the interests of all other stakeholders, including other nursing facility residents.

3

1. <u>The Case of Appellant Wilson and Others Exemplifies Why Mandatory Post-Hearing Enforcement of Transfer/Discharge Appeal Determinations is Inappropriate</u>

The complexities of involuntary discharges can be readily understood by evaluating a few case studies of involuntary discharge allegations that have been tested in court. Typically, following a resident's hospitalization, a nursing facility will readmit the resident because, upon discharge from the hospital, the resident still requires the services provided by the facility and can be appropriately cared for in the facility. In rare but difficult cases, however, the skilled nursing facility may encounter a resident that is not appropriate for readmission but nonetheless seeks readmission. In these cases, readmission may be plainly unlawful because for example, the patient does not have an attending physician, *see, e.g.*, 42 C.F.R. § 483.40 (requiring that each resident be under the care of a physician), the facility cannot provide appropriate care for the resident, *see e.g.*, Cal. Health & Safety Code § 1418.6 (prohibiting a nursing facility from accepting or retaining a resident for whom it cannot provide appropriate care), or an employee or resident of the facility has a restraining order against the resident seeking readmission. Given these complexities, it is no surprise that federal law does not provide a private right enforceable under 42 U.S.C. § 1983 and that the state declines to blindly compel readmission without regard for the full range of regulatory obligations shouldered by the skilled nursing facility and the rights of other residents.

By way of example, taking the case of Plaintiff-Appellant John Wilson, Appellants represent that the DHCS ordered St. Johns Pleasant Valley Hospital Distinct-Part Skilled Nursing Facility's sub-acute unit to immediately readmit Mr. Wilson to the first available bed.  Appellants' Opening Brief ("AOB") at 10.  In truth, however, the Superior Court of California subsequently issued a writ directing DHCS to set aside this order because Mr. Wilson did not have an attending physician and the law required him "to be under the care of an attending physician while residing in the subject medical facility."  ER 026 (citing 42 C.F.R. § 483.20; Cal. Code Regs. tit. 22, § 72303).[2]  In other words, the initial DHCS decision would have required the skilled nursing facility to admit a resident without any attending physician to order and direct his care, in direct violation of federal and California law.[3]  The importance of an attending physician for skilled

---

[2] In the Statement of Decision, Mr. Wilson is referred to as Real Party in Interest John Doe because the skilled nursing facility used a fictitious name to protect Mr. Wilson's privacy in the writ proceedings.  But, in a Notice of Related Case, Mr. Wilson expressly identifies himself as Real Party in Interest John Doe.  ER 017.

[3] Federal law requires that "each resident" of a skilled nursing facility "remain under the care of a physician," 42 C.F.R. § 483.40, and that at the time of admission, each resident has physician admitting orders, 42 C.F.R. § 483.20(a). California law also requires that each resident be under the care of an attending physician.  Cal. Code Regs. tit. 22, § 72303(a) ("[a]ll persons admitted or accepted for care by the skilled nursing facility shall be under the care of a physician . . . ."); *id.* at § 72307(a) (resident must be under the "continuing supervision" of an attending physician); *id.* at § 51335(g) (providing for Medi-Cal reimbursement only where services are "provided on the signed order" of the responsible physician).

5

nursing facility residents cannot be understated: Without an attending physician to order and supervise a resident's care, the facility would be in the untenable position of unlawfully engaging in the practice of medicine or failing to provide necessary medical care to a resident. *See* ER 025. On September 21, 2016, DHCS filed its Return to Writ in Sacramento Superior Court confirming that it had vacated its prior decision and issued a new decision confirming that the skilled nursing facility was not required to readmit Mr. Wilson. Respondent's Return to Writ, *St. John's Pleasant Valley Hosp. D/P SNF-Subacute Unit v. Dir. Dep't Health Care Svcs.*, No. 34-2015-80002189 (San Francisco Superior Court 2016).

In another case, a skilled nursing facility was sued by a resident under California Health and Safety Code section 1430(b) for failing to readmit the resident after her hospitalization without a psychiatric evaluation. The resident, Hazel Walsh, was "suffering from a lack of appropriate psychiatric care" due to her daughter's refusal to permit her to receive psychiatric care under a durable power of attorney for medical care. *Walsh v. Kindred Nursing Centers West, LLC*, No. CGC-11-512497, Statement of Decision at 10 (San Francisco Superior Court, Apr. 22, 2013). On October 28, 2010, she was transferred to the hospital for acute medical and psychiatric care. *Id.* at 11. Ms. Walsh, however, did not receive a psychiatric evaluation. *Id.* at 10. The skilled nursing facility, with no psychiatric evaluation or treatment plan, was wholly unable to evaluate whether it could

6

provide appropriate care for Ms. Walsh. *Id.* at 11. It therefore declined to readmit her, and after prevailing in her transfer/discharge appeal before DHCS, Ms. Walsh sought a mandatory injunction and statutory damages under section 1430(b). The court, however, recognized that the skilled nursing facility's obligations[4] were more complicated than could be evaluated in the administrative appeal:

> Plaintiff argues that Ms. Walsh [*sic*] rights to readmission should supersede the obligation of [the skilled nursing facility] to follow the law in regard to evaluating each potential resident to see if they can provide the proper care. The argument also glosses over the fact that [the skilled nursing facility] has obligations to not just Ms. Walsh but also has an obligation to all of its other 119 residents.

*Id.* at 11. Without a psychiatric evaluation and treatment plan for a resident with acute psychiatric issues, the court found that the skilled nursing facility properly and lawfully declined to readmit Ms. Walsh, notwithstanding her desire to be readmitted. *See* ER 181 n.3.

In other cases, skilled nursing facilities have been unable to readmit residents despite transfer/discharge appeal orders because of a restraining order. For example, in one case, a resident secured a temporary and then permanent restraining order against a resident seeking readmission based on allegations of abuse. *Carmona v. Flores*, No. GS016481 (Los Angeles Superior Court, March 22, 2016). Notwithstanding DHCS' order for readmission in the transfer/discharge

---

[4] California law prohibits nursing facilities from "accept[ing] or retain[ing]" a resident for whom it cannot provide appropriate care. Cal. Health & Safety Code § 1418.6; Cal. Code Regs. tit. 22, § 72515(b).

appeal, readmission in such a case would be inappropriate and unlawful.  *See* ER 181 n.3.

More recently, the Sacramento Superior Court took note of a discharged resident's aggression toward her husband (another resident at the facility) and declined to issue a preliminary injunction.  Any "speculative harm that Mrs. Single is suffering by the separation from her husband is outweighed by the risk Mrs. Single poses to herself, her husband, and other residents of [the skilled nursing facility] if the court orders [the facility] to immediately readmit Mrs. Single."  *Single v. Congregational Church Retirement Community*, No. 34-2017-00220058-CU-NP-GDS, Minute Order at 6 (Sacramento Superior Court, Nov. 14, 2017).  In fact, it is a sad reality that many cases of declined readmissions involve residents with violent tendencies that jeopardize the physical and psychosocial health of other residents, caregivers, or both.  These troubling cases place the rights of the discharged resident in direct conflict with the rights of other residents and the facility's employees (neither of whom are parties to the transfer/discharge appeals).  Regulators and facilities need the flexibility to approach these cases in a thoughtful manner, and mandatory post-hearing enforcement of transfer/discharge appeals would deprive them of the discretion they need to address other residents' and employees' rights to security and safety.

Because of privacy concerns skilled nursing facilities do not generally

8

comment on the circumstances behind involuntary discharges outside of litigation. Doing so may divulge confidential information and protected health information as defined by the California Confidentiality of Medical Information Act, Cal. Civil Code § 56 *et seq*., and regulations promulgated under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 45 C.F.R. § 160.103, 164.500 *et seq*.  As such, media coverage of involuntary discharges disproportionately skews toward the views of a small handful of disaffected residents while omitting the interests of other residents and the larger context of competing obligations faced by skilled nursing facilities.  *See, e.g.*, AOB at 7 n.2 (citing various news stories relying on unverified anecdotes from disaffected residents to assert the existence of an "extensively documented" resident dumping "epidemic").  Although Appellants would like skilled nursing facilities' obligations with regard to readmissions to be simple, the full facts of involuntary discharge cases makes clear that they are enormously complex and that regulators and skilled nursing facilities are balancing competing regulatory requirements in a nuanced manner when determining if readmission is appropriate.[5]

---

[5] To the extent that Appellants contend hospitalized residents have an absolute right to readmission to their skilled nursing facility, they are plainly incorrect.  The Centers for Medicare and Medicaid Services ("CMS") has expressly acknowledged that a resident can be discharged during a hospital stay and hospitalized residents need not be uniformly readmitted: "At the time a facility determines that a resident cannot be readmitted to the facility, the resident is effectively discharged from the facility."  81 Fed. Reg. 68,688, 68,735 (Oct. 4, 2016).

2.   California Regulators Need the Flexibility to Exercise Appropriate Discretion in Involuntary Discharge Cases

As detailed in Defendant-Appellee's Answering Brief ("AAB"), CMS, the California Department of Public Health ("CDPH"), and the Office of the Attorney General for the State of California each have enforcement authority and the ability to impose appropriate remedies where a skilled nursing facility fails to comply with its obligations concerning transfers and discharges.[6]  AAB 7 – 8, 13 – 16, 34 – 35.  In addition, individual residents are free to make complaints to CDPH or directly sue skilled nursing facilities for statutory damages, injunctive relief, and attorney fees in the case of an unlawful discharge.  *Id.* at 17, 33 – 35.  Without restating the varied enforcement mechanisms available to state and federal regulators and residents, it is worth noting that they are numerous and overlapping, such that skilled nursing facilities face significant regulatory and legal risks when they make the difficult choice to involuntarily discharge a resident.

_____

[6] If CDPH determines that a facility violated discharge and readmission rules during a survey or complaint visit, CDPH may issue citations and fines.  Cal. Health & Safety Code § 1423(a).  CDPH may also recommend that CMS impose federal civil monetary penalties, deny Medicare or Medicaid payment for new admissions, deny payment for all Medicare or Medicaid residents, and/or terminate the facility's Medicare and/or Medicaid provider agreements.  42 C.F.R. §§ 488.402 *et seq.*; Cal. Health & Safety Code §§ 1423(a)(1), 1429.1(a).  The facility must also timely correct the violation under a plan of correction.  42 C.F.R. § 488.402; Cal. Health & Safety Code § 1425.  In some cases, CDPH has required the readmission of a resident as part of the facility's plan of correction.  Finally, the California Office of the Attorney General may sue for injunctive relief (including an order of readmission if appropriate).  Cal. Health & Safety Code § 1430(a).

Each of these enforcement mechanisms allows for consideration of the involuntary discharge issues in a holistic manner that accounts for the full range of the skilled nursing facility's legal obligations and the rights of the larger resident community. When all of these factors are balanced out, it is rare that a regulator or a court will ultimately compel readmission of a resident. Contrary to Appellants' assertions, this reality reflects the enormous complexities and competing obligations that arise in involuntary discharges rather than some sort of dereliction of duty on the part of California regulators. And, a resident that is dissatisfied with the response of regulators remains free to file suit under California Health and Safety Code section 1430(b), recovering attorney fees, costs, and statutory damages even if the resident is of limited means and did not suffer financial harm.

**B.**  **California's Standardized Admission Agreement Ensures Each Resident is Aware of His or Her Right to Readmission**

Appellees, like others that seek to paint a picture of an unlawful discharge crisis in nursing facilities, rely on an oft-cited law review note written by William Pipal for the *Elder Law Journal* in 2012. In that article, Mr. Pipal identifies two circumstances that may allow a nursing home to avoid liability when unlawfully discharging a resident: (1) Nursing home residents are not aware of their rights regarding discharges and bed holds, and (2) Admission agreements permit eviction without just cause. William Pipal, *You Don't Have to go Home But You Can't Stay Here: The Current State of Federal Nursing Home Involuntary Discharge Laws*,

11

20 Elder L.J. 235, 256 – 258 (2012).  California, however, has effectively

addressed Mr. Pipal's concerns by standardizing admission agreements to ensure

that each resident is aware of discharge and bed hold rights and that admission

agreements limit the nursing facility's right to discharge residents consistent with

state and federal law.

California skilled nursing facilities are required to use a standard admission

agreement developed and adopted by CDPH.  Cal. Health & Safety § 1599.61(a).

The California Standard Admission Agreement for Skilled Nursing and

Intermediate Care Facilities, Form No. CDPH 327 (May 2011),

https://www.cdph.ca.gov/CDPH%20Document%20Library/ControlledForms/cdph

327.pdf ("Standard Agreement"), is incorporated by reference in California

regulations, and providers are prohibited from altering the Standard Agreement

except to fill in blanks or at the direction of CDPH.  Cal. Code Regs. tit. 22,

§ 72516(a), (b).  Residents cannot be required to "sign any other document at the

time of, or as a condition of, admission to the licensee's facility, or as a condition

of continued stay in the facility."  *Id.* at § 72516(c).

Section VI and VII of the Standard Agreement provide clear notice of

residents' rights with regard to transfers, discharges and bed holds.  For example,

Section VI informs residents that they cannot be transferred or discharged against

their wishes except on the basis of six permissible reasons.  Residents are also

informed of their right to appeal transfers and discharges and to contact the State Long-Term Care Ombudsman. Standard Agreement, § VI. The Standard Agreement separately informs residents of their rights under state and federal law. *Id.* § IV & Att. F. Finally, the agreement includes contact information for the Office of the State Long Term Care Ombudsman and the Licensing and Certification District Office of C, *id.* § I, IV, XI, and informs residents of their right to "voice grievances . . . without fear of any reprisal," *id.* § IV.

California's standardization of skilled nursing facility admission agreements thus removes the risk that providers will bury or misrepresent federal or state laws concerning transfers or discharges. The Standard Agreement assures that residents are provided with accurate information regarding involuntary discharges along with the information they need to pursue any grievances. In short, the regulatory environment in California sharply diverges from that described in the literature on involuntary discharges in a way that maximizes patient autonomy and reduces the risk of improper, involuntary discharges.

## C.  <u>Involuntary Discharges are Rare and Generally Involve Extraordinary Circumstances</u>

Appellants contend that there is a shocking epidemic of involuntary discharges. AOB 5 – 7. On probing, however, this assertion falls apart. There is no data substantiating an "epidemic" of unlawful discharges or even that nursing facilities are improperly refusing to voluntarily comply with DHCS' decisions in

the majority of transfer/discharge appeals.  Instead, there are well-publicized

anecdotes based exclusively on the discharged resident's perspective and partial

truths.  *See* AOB 7 n.2 (citing five news articles as "extensive[]" documentation of

a "dumping epidemic").  For example, one of the articles cited by Appellants as

evidence of a "patient dumping epidemic" relies largely on the case of Ms. Walsh

and another relies largely on the case of Appellant Wilson.  AOB at 7 n.2 (citing

California Nursing Home Evictions On The Rise, CBS News (Aug. 11, 2011),

http://sanfrancisco.cbslocal.com/2011/08/01/some-bay-area-nursing-homes-

kicking-out-hospitalized-patients/; Matt Sedensky, Nursing Homes Turn to Eviction to

Drop Difficult Patients, AP News (May 8, 2016), available at https://www.apnews.com/

95c33403b5024b4380836d3ed3dfecb0).  When courts examined the claims of these two

residents, however, they concluded that the residents had not been unlawfully discharged

and that readmission was inappropriate.  *See* discussion, Part A.1, *supra*.

A few of these articles also make reference to complaint data on discharges,

*see, e.g.* AOB 7, n.2 (citing Theo Francis, *To Be Old Frail and Evicted: Patients at*

*Risk*, Wall Street J. (Aug. 7, 2008), http://canhr.org/newsroom/canhrnewsarchive/

2008/WallStreetJourn20080807.pdf), but this data does not document or establish an

unlawful discharge epidemic.  Like anecdotes in newspapers, complaint data

simply reflects the dissatisfaction of some residents but not the overall merits of

their complaints.   In California, unverified complaints are a particularly significant

problem.  In 2015 (the most recent year for which data is available), only 62.2

percent of resident complaints in California were verified, compared to 73.9 percent nationally. Despite the high volume of unverified complaints, California skilled nursing facilities reach a satisfactory resolution with the vast majority of complainants—96.8 percent. (National numbers for satisfactory resolutions were somewhat lower at 95.7 percent.) Finally, transfer, discharge, and admission complaints constitute 5.9 percent of resident complaints in California (1,515 transfer, discharge, and admission complaints of 25,802 total complaints), compared to 8.3 percent nationally (11,664 transfer, discharge, and admission complaints of 140,105 total complaints). Admin. for Cmty. Living, National Ombudsman Reporting System (2015), https://agid.acl.gov/DataGlance/NORS/. Overall, these numbers conflate legitimate with unfounded complaints and do not distinguish between cases where the facility ultimately agreed to readmit the resident and those cases where the resident was not readmitted. Despite the vocal protests of a relatively small group of residents (whose readmission may not be lawful or appropriate), there is little evidence of a significant problem concerning involuntary discharges, let along an "epidemic" of such discharges.

## CONCLUSION

For the foregoing reasons and the reasons set forth in Defendant-Appellee's Answering Brief, the District Court's order should be affirmed.

15

Dated:  April 23, 2018  Respectfully submitted,

        HOOPER, LUNDY & BOOKMAN, P.C.


By:   /s/ Mark E. Reagan
      MARK E. REAGAN
Attorneys for Amicus Curiae California
Association of Health Facilities

5496362.6

## CERTIFICATE OF WORD COUNT

1.     This brief complies with the type-volume limitations of Fed. R. App. P. 29 and

32(a)(7)(B) because it contains 3623 words, excluding the parts of the brief exempted by Fed. R.

App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)

and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a

proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

Dated:  April 23, 2017                          HOOPER, LUNDY & BOOKMAN, P.C.


                                        By:     /s/ Mark E. Reagan
                                                MARK E. REAGAN
                                        Attorneys for Amicus Curiae California
                                        Association of Health Facilities

| 9th Circuit Case Number(s) | 16-16193 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)

April 23, 2018   .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)      /s/ Mark E. Reagan

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)                        .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)